UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

FEDERAL TRADE COMMISSION,

　　Plaintiff,

v.                                                                          Case No.  6:11-cv-1186-Orl-28TBS

DIRECT BENEFITS GROUP, LLC; VOICE
NET GLOBAL, LLC; SOLID CORE
SOLUTIONS, INC.; WKMS, INC.; KYLE
WOOD; and MARK BERRY,

　　Defendants.

　　　　　　　　　　　　　　　　　　　　　　　　

## REPORT AND RECOMMENDATION[1]

This cause is before the Court without oral argument on:

(1) Defendants' Motion to Allow Limited Release of Frozen Funds for Final Payment of Attorney's Fees and Supporting Memorandum of Fact and Law (Doc. 112);

(2) Plaintiff's Response and Objection to Defendants' Motion to Allow Limited Release of Frozen Funds for Final Payment of Attorney's Fees (Doc. 119); and

(3) Defendants' Reply Memorandum in Support of Defendants' Motion to Allow Limited Release of Frozen Funds for Final Payment of Attorney's Fees (Doc. 128).

On May 9, 2012, the district judge referred the motion to the magistrate judge for a report and recommendation.  The Court has considered the pleadings and respectfully recommends  that the motion be DENIED WITHOUT PREJUDICE.

### I. Background

The Federal Trade Commission ("FTC") filed suit against Defendants alleging in Count I that they had violated section 5 of the Federal Trade Commission Act ("Act"), 15

---

[1] Specific written objections may be filed in accordance with 28 U.S.C. § 636, and M.D. FLA. R. 6.02, within fourteen (14) days after service of this report and recommendation.  Failure to file timely objections shall bar the party from a de novo determination by a district judge and from attacking factual findings on appeal.

U.S.C. §§ 45(a) and 45(n) and in Count II, that they had violated Section 5(a) of the Act, 15 U.S.C. § 45(a).  (Doc. 1).  The FTC's complaint alleges the following facts:[2] Defendants engaged in a scheme to debit the bank accounts of consumers seeking payday loans without their knowledge or consent.  Consumers who visited the Defendants' websites were asked to complete online application forms for a payday loan.  In reality, the applications were vehicles for Defendants to collect financial information from consumers which Defendants used to enroll consumers in programs for which they were charged membership fees.  In order to complete the online applications, consumers were required to provide personal and financial information, such as their names, social security numbers, drivers license numbers, bank routing numbers, and bank account numbers.  After filling out what appeared to be payday loan applications, consumers were directed to click on a "submit" or "confirm" button to complete the process and submit their applications.  At that point, consumers would begin to receive emails from various payday lenders while at the same time, they were enrolled, unwittingly, into one of Defendants' programs.   Defendants charged consumers various fees for membership in their programs.  Defendants sent consumers' bank account information to payment processors to create and deposit remotely created payment orders which debited the consumers' bank accounts as payment for the programs.  Consumers typically did not discover that they had been enrolled in one of Defendants' programs until they saw debits they did not recognize on their bank statements or they were contacted by their banks because their accounts were overdrawn as a result of the unanticipated debits.  Many consumers called Defendants' toll-free number to find out why the debits were made to their accounts and to try to obtain refunds.  Defendants made it very difficult for

---

[2] These facts are set forth in Plaintiff's Complaint, paragraphs 14-23.

consumers to obtain refunds.

Based upon the FTC's allegations, declarations and exhibits, the Court found good cause to believe the FTC was likely to prevail on the merits of this action and entered an Ex Parte Temporary Restraining Order with Ancillary Relief ("TRO"). (Doc. 15). The TRO included a freeze of Defendants' assets existing when the Order was entered and assets subsequently obtained from the Defendants' activities related to the marketing and sale of payday loans or payday loan application services. The Court also appointed a Temporary Receiver ("Receiver"), whose duties included assuming full control of, managing and preserving the frozen assets. (Id. at 3, 13).

Defendants engaged attorneys, William I. Rothbard and Douglas C. Spears to represent them in this case. Rothbard is a member of the California Bar who specializes in the field of FTC advertising law. (Doc. 113 ¶ 2). He received a $50,000 retainer which Defendants raised with help from friends and relatives. (Id. ¶ 11). Rothbard used $10,000 of that money to retain Spears to act as local counsel. (Id.). Due to the circumstances of this case, Rothbard and Spears were called upon to do a great deal of work in a short amount of time. (Id. ¶ 12).

The FTC filed a motion for a preliminary injunction (Doc. 51) and, following a hearing, the Court granted the motion and entered its Order and Preliminary Injunction ("Injunction"). (Docs. 71 and 73). The Court found good cause to believe Defendants had engaged in acts and practices that violated Section 5(a) of the Act and that the FTC was substantially likely to prevail on the merits of this action. (Doc. 71). The Court also found good cause to continue the asset freeze provided, however, the Court said it would consider lifting or modifying the freeze, upon motion of a party or the Receiver should it become apparent that the freeze was no longer necessary to protect consumers or for

other good cause shown. (Id.) The Court also appointed the Receiver as the permanent receiver for the corporate Defendants. (Id.) A review of the record reveals that the Defendants have not appealed the TRO or the Injunction.

After the Injunction issued, Defendants filed a motion to lift or modify the asset freeze. (Doc. 76). At the time, the Receiver was in possession of approximately $1,300,000. (Id. at 21). Defendants argued that the freeze left them without any means to mount a defense to the FTC and that they desperately needed money to pay bills including attorneys' fees. (Id. at 4, 6). When the motion was filed, Defendants owed Rothbard $69,873 and Spears $18,238. (Id. at 9). The FTC opposed the motion, arguing in part, that Defendants had no right to counsel in a civil case, the money in question was "ill-gotten gains," and Defendants' potential liability far exceeded the frozen assets. (Doc. 85). The motion was referred to the Magistrate Judge who denied it without prejudice after finding that it was "essentially a series of conclusory arguments without proper factual support or record citations." (Doc. 90).

On April 30, 2012, Rothbard and Spears filed their motion for leave to withdraw as counsel for Defendants. (Doc. 109). As grounds, they stated that the $50,000 retainer was the only payment they had received, and that Rothbard was owed an additional $138,591 and Spears was owed an additional $39,787. They also reported that the Defendants had terminated their services because the Defendants were unwilling to incur additional obligations to their attorneys which they had no ability to pay. (Id. at 3). Rothbard also sought leave to withdraw so that he could testify as a material witness for the Defendants. (Id. at 3-4). Included in the motion to withdraw is a discussion of Rothbard's attempts to settle this case and his opinion that his efforts failed because the FTC refused to negotiate and was making demands beyond the capability of defendants,

Kyle Wood and Mark Berry to meet. (Id. at 5-7). The FTC opposed the motion out of concern that if granted, the result might be a delay in the trial. (Doc. 120). The Court gave Defendants 14 days to retain substitute counsel and denied the motion to withdraw without prejudice, with leave to renew it after 21 days. (Doc. 124).

While Counsels' motion to withdraw was pending, Defendants filed another motion to modify the asset freeze so that they could make final payment to Rothbard and Spears. (Doc. 112). Defendants stated that they had terminated their lawyers, Rothbard was needed as a material witness, and Defendants had retained new counsel on terms that would not require them to incur significantly more legal debt. (Id.). In their motion, Defendants argue that Rothbard and Spears have played key roles in this case and have served Defendants' interests, the public interest and the administration of justice in the following two ways: (1) by presenting a vigorous defense to the FTC's motion for entry of the Injunction; and (2) after the Injunction was entered, Rothbard labored for months without compensation in an attempt to achieve a full, final settlement of this controversy. (Id.).

In its response, the FTC estimates that at least $9,500,000 will be required to make restitution to consumers and thus, the funds in the Receiver's possession are insufficient to compensate the victims. (Doc. 119 at 4). The FTC also repeats its arguments that Defendants do not have a right to counsel in a civil case, and should not be permitted to use their "ill-gotten gains" to pay their lawyers. (Id. at 5). With the Court's permission, Defendants filed a reply in which they explain that–if granted– the release of funds would result in their lawyers being paid only a small fraction of the funds held by the Receiver and would not have a meaningful impact on the amount of restitution paid to consumers. (Doc. 128). Defendants also express their opinion that the

FTC will be unable to prove Wood and Berry knowingly committed fraud or turned a blind eye to fraud and consequently, the FTC will fail in its attempt to obtain monetary relief from Wood and Berry.  (Id. at 3).

On May 25, 2012, attorney Robert Hendry appeared as counsel for Defendants. (Doc. 143).  Five days later, Rothbard and Spears filed a renewed motion for leave to withdraw which was granted by the Court.  (Docs. 146 and 148).  On June 4, 2012, the Court granted attorney, John Christian Barlow leave to appear pro hac vice as additional counsel for Defendants.  (Doc. 152).

## II. Discussion

This Court has the authority to freeze the Defendants' assets.  United States v. Monsanto, 491 U.S. 600, 614 (1989); FTC v. H.N. Singer, 668 F.2d 1107, 1113 (9th Cir. 1982) (holding that district courts have the power to make freeze orders); SEC v. Quinn, 997 F.2d 287 (7th Cir. 1993); SEC v. Dowdell, 175 F.Supp. 2d 850, 854 (W.D. Va. 2001) ("Courts clearly have the authority to enter freeze orders in an SEC enforcement action.").  This includes the authority to prohibit use of the Defendants' assets to pay their attorneys.  CFTC v. Noble Metals Intern., Inc.,  67 F.3d 766, 775 (9th Cir. 1995) ("A district court may, within its discretion, forbid or limit payment of attorney fees out of frozen assets.").

The FTC estimates $9,500,000 in damages owed to consumers and in his second status report the Receiver said he is holding $1,381,513.29.  (Doc. 126 at 2).  Based upon the Court's findings in the TRO and Injunction, and in view of the sums involved, the Defendants' assets continue to be appropriately frozen to prevent them from being diverted or dissipated and to ensure they are available to make restitution to victims. CFTC v. Levy, 541 F.3d 1102, 1113 (11th Cir. 2008); SEC v. ETS Payphones, Inc., 408

F.3d 727, 734 (11th Cir. 2005) ("[A]sset freeze is justified as a means of preserving funds for the equitable remedy of disgorgement."); CFTC v. Muller, 570 F.2d 1296, 1301 (5th Cir. 1978)[3] ("This temporary freeze of defendant's assets was reasonably necessary to assure that the court's jurisdiction would not be defeated by the defendant's disposition of assets in the event the court should ultimately order disgorgement of the allegedly misappropriated funds."); CFTC v. Amer. Metals Exch. Corp., 991 F.2d 71, 79 (3d Cir. 1993) ("Because a freeze is designed to preserve the status quo by preventing the dissipation and diversion of assets, we will allow the freeze to remain in effect until the district court determines whether it can make an informed determination of the amount of unlawful proceeds retained by Maxwell, and, if it can, what that amount may approximate.") (internal citation omitted).

The Court's TRO and Injunction were both immediately appealable. While the Defendants decision not to appeal these orders will not preclude an appeal at the conclusion of the case "it does prevent review of questions that should be resolved before disposition on the merits--particularly, whether the defendant is entitled to use particular assets to mount an expensive defense." Quinn, 997 F.2d at 290.

Defendants believe Rothbard and Spears are entitled to payment because, while their efforts were not successful, they provided the Defendants vigorous, thorough, conscientious representation under severe time constraints and it would not be fair if Rothbard and Spears are not paid. The FTC does not dispute the quality of the representation by Rothbard and Spears or that they are entitled to be paid for the work they did. The question is whether the frozen assets are an appropriate source for

---

[3] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

payment of Defendants' lawyers.  At this point, no one knows what the outcome of this case will be.  Until the Court makes a final determination on the issues of liability and if appropriate, damages and remedies, it is premature to unfreeze assets which may be required to make restitution payments to consumers.

Defendants contend that Rothbard and Spears should be paid because their efforts to settle this case would, if successful, have conserved both the FTC and the Court's resources.  This is not a valid consideration in deciding whether to lift the asset freeze at this time.  First, the FTC is under no obligation to compromise and settle with the Defendants.  Second, the settlement of a lawsuit is not as simple as Defendants make it sound.  In deciding whether to settle, parties must consider their confidential evaluations of the case, confidential evaluations of the likelihood of recovery on a judgment, timing, the opponent's motives, and the terms routinely negotiated and included in settlement agreements.  The Court, appropriately, is not privy to this information and should not engage in speculation over what might have been had the FTC accepted an offer from the Defendants.

Defendants, Wood and Berry, relying upon Seventh Circuit case law, do not believe they can be held personally liable because the FTC will not be able to prove they had actual or constructive knowledge that the Defendants were engaged in practices which violated the Act.  Accordingly, they believe the freeze of their assets should be lifted to pay counsel.  The Seventh Circuit has held that before an individual can be held liable for a corporation's deceptive practices, the FTC must prove: (1) a corporate violation of section 5 of the Act; (2) that the individual participated directly in the deceptive acts or had authority to control them; and (3) that the individual had "actual knowledge of material misrepresentations, reckless indifference to the truth or falsity of

such misrepresentations, or an awareness of a high probability of fraud along with an intentional avoidance of the truth." See FTC v. Amy Travel Service, Inc., 875 F.2d 564, 573-74 (7th Cir. 1989); FTC v. World Media Brokers, 415 F.3d 758, 763-64 (7th Cir. 2005). The parties have not cited, and the undersigned has not located any Eleventh Circuit case for this proposition. Regardless, it would not be appropriate to unfreeze the Defendants' assets based upon their speculation and belief about how this litigation will ultimately end. This is particularly the case in light of the Court's finding that there is good cause to believe the FTC will prevail on the merits.

If, the Defendants are correct, and they prevail wholly or in part, or if the FTC's estimates of the losses is too high, then at the conclusion of this case, there may be funds available to pay Rothbard and Spears. Until then, it is not appropriate to use the frozen assets to pay Defendants' lawyers.

### III. Recommendation

In view of the foregoing, it is respectfully RECOMMENDED that Defendants' Motion to Allow Limited Release of Frozen Funds for Final Payment of Attorney's Fees and Supporting Memorandum of Fact and Law (Doc. 112) be DENIED WITHOUT PREJUDICE.

Respectfully submitted on August 9, 2012, in Orlando, Florida.

THOMAS B. SMITH
United States Magistrate Judge

Copies to:

    Presiding United States District Judge
    Counsel of Record